# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CHAVEZ, | Case No. 1:13-cv-00342-SKO (PC) |
| Plaintiff, | ORDER DENYING PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| KINGS COUNTY, et al., | (Docs. 28, 36) |
| Defendants. | THIRTY (30) DAY DEADLINE |

## I.  **Background**

Plaintiff, Juan Chavez, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on March 13, 2013.  This action for damages is proceeding on Plaintiff's complaint against Defendant Castro for excessive force in violation of the Eighth Amendment for an incident that occurred during the quelling of a prison riot on March 27, 2012.

On May 6, 2015, Defendant filed a motion for summary judgment.  Fed. R. Civ. P. 56(c).[1] (Docs. 28, 29,[2] 30-33.)  After receiving an extension of time to file his opposition, Plaintiff filed a document titled as his own motion for summary judgment.[3]  (Doc. 36.)  After receiving an

---

[1] The Federal Rules of Civil Procedure will be referred to as "Rule *." Any reference to other statutory authorities shall so indicate.

[2] Defendant provided Plaintiff notice of the requirements for opposing a motion for summary judgment with his motion. *Woods v. Carey*, Nos. 09-15548, 09-16113, 2012 WL 262 6912 (9th Cir. Jul. 6, 2012), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

[3] Plaintiff appears to have intended this document to serve as his opposition to Defendant's motion and not an entirely new motion for summary judgment. However, whether errantly or intentionally titled as a motion, it will be evaluated

extension of time, Defendant filed his reply. (Doc. 41.)   Thus, the parties' motions for summary judgment are deemed submitted.[4]  Local Rule 230(*l*).  For the reasons that follow, both Defendant's and Plaintiff's motions for summary judgment are denied.

## II.     Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1422, 1436 (9th Cir. 1987).  The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the

---

as a motion, but need not be addressed as an opposition since Defendant failed to meet his burden in moving for summary judgment on Plaintiff's excessive force claim.

[4] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system, unless otherwise noted.

2

presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015); *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011). Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, *Soremekun*, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

**III.    Eighth Amendment Standards**

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). When a prison security measure is undertaken in response to an incident, the question of whether the measures taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6.

The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force

3

authorized or applied was unreasonable, and hence unnecessary." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Hudson*, 503 U.S. 1. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley* at 321-322 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1970)).

Moreover, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (internal quotations marks and citations omitted). Although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment. *Id.*; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not de minimis injuries)). "Injury and force [] are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38, 130 S.Ct. 1175, 1178-79 (2010).

However, "[u]nreasonable force claims are generally questions of fact for a jury" and "qualified immunity is not properly granted" on such claims. *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995).

**IV.    Discussion**

    **A.    Undisputed Facts**[5]

Plaintiff is presently incarcerated at the Substance Abuse Treatment Facility in Corcoran, California. At the time of the events set forth in his complaint, Plaintiff was incarcerated at California State Prison, Corcoran (Corcoran). Defendant is a correctional officer at Corcoran. In

---

[5] In these motions, the vast majority of facts are not disputed. In fact, aside from a very few instances which are noted in the following section, Plaintiff's statement of facts (Doc. 36, pp. 2-5) is a verbatim duplicate of Defendant's (Doc. 28, pp. 2-5) which are also duplicated here. Plaintiff did not submit a separate statement of disputed facts, and instead incorporated his variant version the facts in the statement of facts section in his motion.

March of 2012, inmates housed in Facility 3A at Corcoran and associated with the disruptive groups known as the Fresno Bulldogs and the Southern Mexicans were engaged in ongoing, violent conflict. To reduce the likelihood of further violence between the two groups, prison officials had instituted a "modified program," whereby inmates were escorted by correctional officers at all times when they moved about the prison, and most non-essential prison programming was suspended.

In late March, correctional staff in Facility 3A were attempting to re-integrate the Bulldogs and the Southern Mexicans through a series of "incremental releases," so that normal programming could resume. During an incremental release, up to four inmates from each disruptive group are released to the yard at a time. If they recreate peacefully, the next day up to six inmates from each group are released. If fights break out, all inmates are returned to their cells. Staff then institutes a cooling-off period of several days or longer, and no inmates are released to yard. Incremental releases then commence again, beginning with the release of up to four inmates from each group at one time. If the incremental releases are successful, the two groups can be expected to program together without violence.

On March 20, 2012, the Facility 3A Lieutenant Keener met with inmate representatives from each group. The inmates assured Lt. Keener that they could attend yard, or "program," together. On March 23, 2012, correctional staff searched the yard to ensure that no weapons were hidden on the yard that could be used if a riot broke out. The search uncovered three inmate-manufactured weapons buried on the yard.

On March 26, 2012, correctional staff issued a chrono (an institutional write-up) to all Bulldog and Southern Mexican – affiliated inmates in Facility 3A. The chrono informed inmates of CDCR's expectation that all general population inmate peacefully participate in facility programs. Plaintiff signed the chrono, indicating that he agreed to abide by all rules and departmental policies, and program with "all other ethnic and disruptive groups."

On March 27, 2012, at 9:00 am, correctional staff on Facility 3A attempted an incremental yard release of Bulldog and Southern Mexican inmates. Sgt. Gonzales directed the release of Bulldog inmates Lopez, Mercado, Zapien, and Perez. Once released, the four Bulldog inmates

walked over to the area across from the Facility 3A dining hall, normally occupied by the Southern Mexican inmates. Lt. Keener directed the release of four Southern Mexican inmates: Plaintiff, Basua, Najera, and Lopez. Once the Southern Mexican inmates were released, the Bulldog inmates immediately approached them. The two factions greeted each other and the Bulldogs returned to their original location. A moment later, the Southern Mexican inmates walked back in the direction of the Bulldogs, and the two groups met at the parallel bars, in front of the dining hall. The inmates faced off and simultaneously began fighting.

When the fighting began, an order was issued over the Public Address system to, "Get down!" The Bulldogs and Southern Mexicans continued fighting. Correctional officers threw grenades of oleoresin capsicum (OC) towards the inmates, but the fighting continued.

Defendant responded to the scene while the riot was in progress. Inmate Mercado was observed striking inmate Basua with closed fists while Basua covered his face in an effort to protect himself. Defendant saw Basua and Mercado fighting and threw an OC grenade in their vicinity. Plaintiff came to the assistance of inmate Basua, his cellmate, and jumped on Mercado's back and began fighting with him. As Plaintiff was "on his way down" to the ground to comply with the officers' orders to get down, he claims he saw a baton "swinging at him." Defendant wrote in his report that he struck Mercado on his left calf with his expandable baton. Defendant does not recall striking Plaintiff while attempting to control Mercado, stop the riot, and restore order.

Eventually, the chemical agents took effect, and the inmates assumed prone positions on the ground to be handcuffed. Medical staff responded to the scene to assess the involved inmate's injuries and decontaminate those who had been affected by the OC grenades. Plaintiff's medical clearance form indicates that he suffered pain, redness, and swelling to the left side of his face. It was later discovered that Plaintiff had a fractured left cheekbone, a fracture under his left eye, and a broken nose. Plaintiff was transferred to Mercy Hospital in Bakersfield where he received emergency surgery to repair the orbital fracture.

/ / /

/ /

**B.     Disputed Facts**[6]

Defendant asserts that Plaintiff *participated in the riot*. (Doc. 28, p. 4, citing SUMF 14.) Plaintiff states that he defended himself. (Doc. 36, p. 4.)

Defendant asserts that when the order to "get down" was given, aside from the Bulldogs and Southern Mexicans who continued fighting, *all other inmates on the yard obeyed.* (Doc. 28, p. 4, citing SUMF 15.) Plaintiff neither duplicated this aspect of the statement of facts, nor offered an alternative version. (Doc. 36, p. 4.)

Defendant asserts that correctional officers threw grenades of oleoresin capsicum (OC) toward the Bulldogs and Southern Mexicans, *but the fighting continued*. (Doc. 28, p. 4, citing SUMF 15.) Plaintiff neither duplicated this aspect of the statement of facts, nor offered an alternative version. (Doc. 36, p. 4.)

Defendant asserts that at one point, Plaintiff heard "screaming" but "couldn't concentrate" on what the officers were saying because he was "pretty much concentrating on defending [him]self." (Doc. 28, p. 4, citing SUMF 16.) Plaintiff states that at one point he heard screaming but couldn't concentrate on what the officers were "saying," but could "see," because he was pretty much concentrating on defending himself. (Doc. 36, p. 4.)

Defendant asserts that after he threw an OC grenade in the vicinity of Basua and Mercado, *they did not stop fighting*. (Doc. 28, p. 4, citing SUMF 18.) Plaintiff neither duplicated this aspect of the statement of facts, nor offered an alternative version. (Doc. 36, p. 5.)

Defendant asserts that as Plaintiff was on his way to the ground to comply with the officers' orders he *did not see how the baton hit him, i.e., whether the officer who allegedly hit him was swinging upward or striking down with the baton*. (Doc. 28, p. 4, citing SUMF 20.) Plaintiff does not duplicate the words in italics, but cites to page 44 of his deposition in which he testified that he saw the baton swing at him and the next thing he knew, he saw a bunch of little stars with confirmation that he does not recall if the baton hit him as Defendant was striking down, or pulling back up on the very next page. (Doc. 36, p. 5.)

---

[6] Those portions of Defendant's statement of fact set forth in italics are those that Plaintiff either rephrased, or left out of his statement of facts.

7

### C. **Defendant's Motion**

Defendant need only prove an absence of evidence to support Plaintiff's case to be granted summary judgment. *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387. However, "[b]ecause [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.").

Defendant's evidence reveals that his interaction with Plaintiff on March 27, 2012, occurred during a riot between the Bulldogs and Southern Mexicans on the recreation yard. When the riot began, an order was given over the loudspeaker for all inmates to "get down," but the fighting continued. OC grenades were thrown towards the fighting inmates without effect. Defendant responded to the scene and threw an OC grenade in the vicinity of inmates Basua and Mercado who were fighting. They continued to fight and Plaintiff came to the assistance of inmate Basua by jumping on inmate Mercado's back. Defendant drew his baton and swung, intending to strike, and striking inmate Mercado on his left calf with the baton. In the course of this, Plaintiff, who was on his way to the ground to comply with the officers' orders to get down, was struck by Defendant's baton on his nose and left cheekbone area.

One key issue is whether Defendant's use of his baton was "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Defendant's evidence shows that it was reasonable for him to use of his baton to break up inmates who were fighting in a riot where lesser methods (verbal commands and OC) proved unsuccessful. Plaintiff's efforts to assist his cellmate caused him to become intricately involved with the two fighting inmates such that Defendant struck Plaintiff with his baton when he struck inmate Mercado. Order was restored almost immediately thereafter, which appears to make Defendant's use of force, via his baton, reasonable.

The next key issue, however, is whether Defendant demonstrates a complete absence of evidence to support Plaintiff's case. *In re Oracle*, 627 F.3d at 387. Defendant's evidence shows that Plaintiff admitted in his deposition: that he participated in the riot (Doc. 28, p. 7, citing SUMF 14); that he fought with at least two inmates, including jumping on inmate Mercado's back, to aid his cellmate during the melee (*id.*, citing SUMF 19); and that he could not tell whether the baton that allegedly hit him was swinging upward or striking down (*id.*, citing SUMF 20).

While Defendant asserts that the evidence he submitted shows that Plaintiff failed to comply with direct orders to stop fighting and get down on the ground (*id.*, citing SUMF 16), the section of Plaintiff's deposition to which Defendant cites reveals that Plaintiff heard officers yelling to get down at the end of the altercation, but not at its inception. Instead, the section of Plaintiff's deposition to which Defendant points shows that at first Plaintiff heard shots and then screaming, but he could not concentrate on or understand what was being said. Further, while Defendant asserts that whether Plaintiff was struck by a baton that was swinging upward or striking down is "crucial information to the determination of whether the baton strike was intentional," this is not necessarily the case. An intentional strike can take place either with a forward or downward motion, or with a backward, upward sweep of the arm -- i.e. a backhand type maneuver. It may be true that Defendant's baton unintentionally struck Plaintiff's face, but the intent behind the contact cannot be determined merely by the direction the baton was moving. While an upward strike may be indicative of an unintentional contact when Defendant raised his arm after striking inmate Mercado as Defendant asserts, Defendant's assertion that only a forward strike can be intentional need not be accepted.

Further, though Defendant submitted his own declaration in which he states that he does not recall striking Plaintiff, he does not declare that any contact between his baton and Plaintiff was an unintended consequence of his efforts to control Mercado. Nor does Defendant state that he had no intention of striking Plaintiff with his baton during this incident. Defendant also fails to state that when he intends to strike an inmate with his baton, he *only* swings it forward and downward in support of his argument that the *direction* of his baton, when contact was made with Plaintiff's face, is essential to his liability. Defendant also asserts that his account that he struck

inmate Mercado on the calf with the baton is consistent with an accidental application of force on Plaintiff, but this again is not a foregone conclusion -- particularly in the absence of any evidentiary support. (*See* Doc. 28, p. 9.)

Defendant further asserts that Plaintiff cannot cite any evidence to demonstrate that Defendant's actions were anything but accidental, much less malicious and sadistic, but fails to cite to any supporting evidence. Further, while it is possible that Defendant's baton struck Plaintiff unintentionally, the extent of a Plaintiff's injury (i.e. a fracture under his left eye, numerous fractures of his left cheek bone, and a broken nose) may suggest otherwise to a finder of fact. *Hudson*, 503 U.S. at 7.

Thus, Defendant fails to present evidence that "permits only one reasonable conclusion" -- i.e., that he did not use excessive force on Plaintiff. *Cameron v. Craig,* 713 F.3d 1012, 1022 (9th Cir. 2013) quoting *Santos v. Gates,* 287 F.3d 846, 851 (9th Cir. 2002). This is particularly true in light of the undisputed fact that "Plaintiff was 'on his way down' to the ground to comply with officers' orders" when he was struck by Defendant's baton. (*See* Doc. 28, 4:17-22.) The Court finds that, Defendant has not met his initial burden of identifying admissible evidence to demonstrate the absence of a genuine issue of material fact as to Plaintiff's claim that Defendant used excessive force when Plaintiff was struck in the face by his baton during the quelling of the riot on March 27, 2012.

Summary judgment is also rarely appropriate on excessive force claims. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos*, 287 F.3d at 853; *see also Liston*, 120 F.3d at 976 n.10 ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."). Defendant fails to present evidence to foreclose any finding in Plaintiff's favor to justify granting summary judgment on Plaintiff's excessive force claim. Finally, Defendant's request for qualified immunity is denied as "[u]nreasonable force claims are generally questions of fact for a jury" and "qualified immunity is not properly granted" thereon. *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995).

1           Thus, Defendant's motion for summary judgment is properly denied.

2      **D.     Plaintiff's Motion/Opposition**

3           Turning to Plaintiff's motion for summary judgment, he bears the burden of demonstrating that no reasonable trier of fact could find other than for him. *Soremekun*, 509 F.3d at 984. As previously noted, the statement of facts in Plaintiff's motion is almost identical to that which Defendant submitted. (*See* Doc. 28, pp. 2-5, Doc. 36, pp. 2-5.)

7           The differences, as previously noted, do not suffice to preclude all findings other than in Plaintiff's favor -- as his burden requires. Defendant's version of events is not precluded by whether: Plaintiff was participating in the riot or defending himself (*compare* Doc. 28, p. 4, Doc. 36, p. 4); all other inmates on the yard obeyed a verbal instruction to "get down" (*compare* Doc. 28, p. 4, Doc. 36, p. 4); the Bulldogs and Southern Mexicans, continued fighting after OC grenades were deployed (*compare* Doc. 28, p. 4, Doc. 36, p. 4); Plaintiff heard screaming, was able to see, but was unable to concentrate on what the officers were saying because he was so focused on defending himself (*compare* Doc. 28, p. 4, Doc. 36, p. 4); inmates Basua and Mercado continued to fight after Defendant threw an OC grenade in their vicinity (*compare* Doc. 28, p. 4, Doc. 36, p. 5); or Plaintiff saw the direction Defendant's baton was traveling (up or down) immediately before it hit him (*compare* Doc. 28, p. 4, Doc. 36, p. 5).

18           Further, the only evidence Plaintiff submits which was not submitted by Defendant is his own declaration which contradicts various aspects of his deposition testimony. (Doc. 36, pp. 62-65.) However, statements in Plaintiff's declaration do not override those made in his deposition as "[a] party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts." *Block v. City of Los Angeles*, 253 F.3d 410, 419, n. 2, (9th Cir. 2001) *ref. Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). Even if the statements Plaintiff made in his declaration were considered, they do not demonstrate "that there were no legitimate correctional purposes motivating the actions [by Defendant] he complains of." *Pratt*, 65 F.3d at 808.

27           Since Plaintiff has not met his burden to be awarded summary judgment on his claims against Defendants, his motion for summary judgment must be denied.

**V.     Order**

As discussed herein, the Court finds that neither Defendant, nor Plaintiff, has met the burden on summary judgment.  "Unreasonable force claims are generally questions of fact for a jury," *Hervey*, 65 F.3d at 791, and neither side presented the requisite overwhelming evidence to deviate from this norm.

Accordingly, for the reasons set forth herein, the Court HEREBY ORDERS that:

1. Defendant Castro's motion for summary judgment, filed on May 6, 2015, is DENIED;
2. Plaintiff's motion for summary judgment, filed on June 8, 2015, is DENIED; and
3. the parties are directed to advise the court within thirty (30) days of service of this order whether a settlement conference would be beneficial.

IT IS SO ORDERED.

Dated:   **March 18, 2016**                              /s/ Sheila K. Oberto
                                                                    UNITED STATES MAGISTRATE JUDGE